UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT ALLEN BAKER,

                    Plaintiff,                              Case No.  1:13-cv-284

v.                                                         Honorable Paul L. Maloney

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C.

§ 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison

Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint on

grounds of immunity and for failure to state a claim against Defendants Szappen, Mohrman, Bell,

McCauley, Finan, Howard, Unknown Party #1, Burtch, Bishop, Malik, Filsinger, Vittitow, Marble,

Masley, Tantchow, Robinson, Jados, Teed, McMillen, Petty, Ludwick, McIntyre, Tribley, Naples,

Pomeroy, Hamel, Sorenson, Collins, Unknown Party #3, Unknown Party #4, Unknown Party #7,

Nardi, Niemisto, Gilbert, Cavin, Haynie, Jelik, Belzner, Unknown Part(y)(ies) #8, Clark, Hunt, Chapman and Kearney, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against the remaining named Defendants.

## Discussion

I.    Factual allegations

Plaintiff Robert Allen Baker presently is on parole with the Michigan Department of Corrections (MDOC).  He complains of prison conditions that occurred while he was housed at five different MDOC facilities between November 28, 2008 and November 27, 2012:  the Saginaw Correctional Facility (SRF); the Mid-Michigan Correctional Facility (STF); the Pine River Correctional Facility (SPR); the Ojibway Correctional Facility (OCF); and the Marquette Branch Prison (MBP).  Plaintiff sues the MDOC, together with Correctional Medical Services, Inc. (CMS) and Prison Health Services, Inc. (PHS) and their successor corporation, Corizon Health, Inc. (CHI).  Plaintiff sues 61 other named individuals and a variety of parties named as "John Doe" or "Jane Doe," listed in this action as Unknown Parties #1 through #9.  He sues CHI employee Lawrence H. Pomeroy, the Vice-President of the Michigan Office of PHS, together with the following MDOC employees:  the unknown Regional Medical Officer known as Unknown Party #1; and the unknown MDOC Pain Management Committee members known as Unknown Party #2.  He also names the following SRF employees:  Law Librarian Erwin Bell; Hearings Officer M. Szappen; Health Unit Manager (HUM) Susan B. McCauley; Doctors Walter F. Finan, (unknown) Burtch, (unknown) Malik, (unknown) Filsinger; Nurses Carla Bishop and Gerald Masley; Physician's Assistant (PA) Howard; and Grievance Coordinator R. Vittitow.  Plaintiff sues the following STF employees:

-2-

Medical Practitioner Diane Marble; Nurses Gerald Masley,[1] Joyce A. Jados, Rosalie K. Petty and Heather M. Bailey; HUM Samuel J. Teed; Dr. Michelle Tantchow; Grievance Coordinator Marshaun Robinson; Inspector (unknown) McMillen; Assistant Resident Unit Supervisor (ARUS) (unknown) Morris; and Warden (unknown) Ludwick.  Plaintiff names the following SPR employees: HUM Edward A. Hunt[2]; Nurse (unknown) Chapman; PA Kearney; and the unknown Grievance Coordinator listed as Unknown Party #3.   At OCF, Plaintiff sues the following individuals: Lieutenant (unknown) McIntyre; ARUSs Deborah Loop, (unknown) Kerrtu and Phil Johns; Food Steward (unknown) Harrison; Sergeant (unknown) Buda; HUM Janet K. Wilbanks; Food Service Director Michael D. DeShambo; Warden Linda Tribley; Grievance Coordinator Thomas Hamel; Administrative Assistant Micki Sorensen; Doctor (unknown) Ralles, Dr. J. Utiselo; Dentist (unknown) Kallal; Dental Assistant Christine Collins; Corrections Officers (unknown) Rihtarshick, (unknown) Carli, (unknown) Axley, (unknown) Dabb, (unknown) Jelik, (unknown) Flouhog; Warden's Assistant Nancy (last name unknown) (docketed as Unknown Party #4); Assistant Food Service Director (unknown) Witburn; and PA Michael P. Millette.  Finally, Plaintiff names the following MBP employees:  two unknown nurses listed as Unknown Parties #5 and #9; Sergeant (unknown) Beltzner; an unknown dentist listed as Unknown Party #6; Dental Assistant (unknown) Clark; an unknown grievance coordinator listed as Unknown Party #7; Gregory Nardi; Kenneth Niemisto; Robert Gilbert; Hearing's Officer Thomas O. Mohrman; Warden (unknown) Naples; eight property room corrections officers, collectively listed as Unknown Part(y)(ies) #8; Dr. Richard A.

---

[1]Defendant Masley also provided or approved some medical care at STF.

[2]Defendant Hunt also provided or approved some medical care at STF.

Bohjanen; Dietician L. Wellman; Food Steward Robert Holmes; Corrections Officer T. Ninnis; Mark Cavin; and Bradley Haynie.

The general thrust of Plaintiff's complaint is that numerous officers and medical personnel at five facilities deprived him of adequate medical care and medical accommodations over a period of four years. He alleges that Defendants conspired to violate the Eighth Amendment and the Americans with Disabilities Act, U.S.C. § 12131 *et seq*. He also alleges that Defendants conspired to retaliate against him for filing numerous grievances, letters of complaint, and a lawsuit. *See Baker v. Misaukee Cnty.*, No. 1:09-cv-1059 (W.D. Mich.).

Plaintiff's 189-page complaint contains 508 paragraphs of factual allegations. The Court will not enumerate those allegations in detail in this portion of the complaint. However, Plaintiff's allegations involving the SRF Defendants involve incidents that occurred between November 7, 2008 and September 18, 2009, when Plaintiff was transferred to the STF. Plaintiff was housed at STF until December 21, 2009, when Plaintiff was transferred to SPR. Plaintiff remained at SPR until February 19, 2010. He then was transferred to OCF, where he remained until September 27, 2010. From that date until he was paroled on November 27, 2012, Plaintiff was housed at MBP.

In general, Plaintiff alleges that he has severe back problems and tooth problems that have been inadequately treated by multiple medical and dental providers. He claims that he has been denied adequate pain treatment, specialized orthopedic and neurological treatment, dental care, and dentures. He also alleges that he has been denied accommodations for his medical disabilities, such as mechanically ground food, housing in an easily accessible location and double mattresses.

Further, Plaintiff contends that he has been harassed, issued false misconducts, and deprived of medical care in retaliation for having filed multiple grievances.

For relief, Plaintiff seeks $100,000.00 in compensatory and punitive damages from each Defendant.

I.      Immunity

A.      **Sovereign Immunity**

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses Plaintiff's § 1983 claim against Defendant MDOC.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).  Plaintiff has named the MDOC.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA.  The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 157, 159 (2006).  If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity.  *Id.*  At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.  Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendant MDOC.[3]

---

[3]Plaintiff sues numerous officials in both their individual and official capacities.  Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity.  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  Moreover, because Plaintiff names the MDOC itself, his official-capacity claims against the remaining Defendants are merely cumulative.  Therefore, the Court will dismiss Plaintiff's ADA claims against all Defendants other than the MDOC.

## B.   Judicial Immunity

Plaintiff alleges that, after holding hearings on certain misconduct charges, Defendants Szappen and Mohrman improperly found him guilty. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted). Defendants M. Szappan and Thomas O. Mohrman are hearing officers whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Because Defendants Szappen and Mohrman are entitled to judicial immunity, Plaintiff's claims against them will be dismissed.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

-8-

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Statute of Limitations

State statutes of limitations and tolling principles apply to determine the timeliness

of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For

civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH.

COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam);

*Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the

claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.

1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run

when the aggrieved party knows or has reason to know of the injury that is the basis of his action.

*Collyer*, 98 F.3d at 220.[4]

Plaintiff's allegations about conduct by Defendants at SRF and STF are time-barred.

He alleges conduct by Defendants at those facilities that occurred between November 7, 2008 and

December 21, 2009.  Plaintiff had reason to know of the "harms" done to him at the time they

occurred.  Hence, his claims accrued in 2008 and 2009.  However, he did not file his complaint until

January 17, 2013, beyond Michigan's three-year limit.  Moreover, Michigan law no longer tolls the

running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS

---

[4]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal
statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S.
369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981,
does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil
rights actions under § 1983 were not "made possible" by the amended statute.  *Id.* at 382.

§ 600.5851(9).   Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991);  *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

       Plaintiff argues, however, that his actions against Defendants at SRF and STF should be tolled under the continuing violation doctrine, because he continued to be given bad health care at other facilities, where he had been sent by official from SRF and STF.  The continuing violation doctrine preserves claims that would otherwise be time-barred if the plaintiff can show a continuous and ongoing violation of his rights.  *Phillips v. Cohen*, 3 F. App'x 212, 218 (6th Cir. 2001). The Sixth Circuit recognizes two types of continuing violations: "those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 288 (6th Cir. 2003).  The continuing violation doctrine is a narrow exception to the statute of limitations rule, and federal courts are hesitant to apply it outside the context of a Title VII employment discrimination case.  *Id.* at 267.  The doctrine is inherently designed to address systemic, policy-based discrimination or injury, and discrimination claims are particularly suited to the exception. *See Phat's Bar & Grill, Inc. v. Louisville–Jefferson Cnty.*, No. 3: 10–CV–00491–H, 2013 WL 124063, at *3 (W.D. Ky. Jan. 9, 2013) ("A discriminatory policy often has a constant and ongoing discriminatory effect on those who suffer under the policy, whereas other constitutional violations are often complete and claims therefor fully accrue at the time the alleged unlawful act occurs and the injury is endured, even though the violations may be connected to other violations.").

       To determine if the plaintiff has alleged a "continuing violation," the Court must conduct a three-part inquiry:

-10-

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern.... Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased in the wrongful conduct.

*Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999); *Kuhnle Brothers, Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).  The acts constituting a continuing violation cannot be discrete acts or merely "continual ill effects from an original violation."  *Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). The continuing violations doctrine was not designed to extend the statute of limitations in cases involving "discrete acts with a corresponding series of discrete injuries."  *Phat's Bar & Grill, Inc.*, 2013 WL 124063, at *4.

Here, while Plaintiff makes a sweeping claim of conspiracy to retaliate across all five prisons between 2008 and 2012, he alleges no conduct by the SRF or STF Defendants beyond 2009.  Instead, he lists a series of discrete decisions by 74 different Defendants under differing circumstances at different times.  His claim therefore fails at the first inquiry because the Defendants at SRF and STF committed no wrongful conduct within the limitations period.  The continuing violation doctrine is particularly ill-suited to these circumstances.

Accordingly, Plaintiff's claims about his treatment at SRF and STF are time-barred, and the following Defendants will be dismissed from the action:  Bell, Szappen,[5] McCauley, Finan, Howard, Unknown Party #1, Burtch, Bishop, Malik, Filsinger, Vittitow, Marble, Masley, Robinson, Jados, Tantchow, Teed, McMillen, Petty, and Ludwick.

---

[5]As the Court previously discussed, Defendant Szappen also is entitled to judicial immunity for his alleged conduct.

-11-

**B.     Absence of Allegations of Active Conduct**

Plaintiff makes no factual allegations against Defendant McIntyre.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).  Plaintiff fails even to mention Defendant McIntyre in the body of his complaint.  His allegations therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  As a consequence, the Court will dismiss Defendant McIntyre from the action.

Plaintiff's only allegations against Defendant Wardens Tribley and Naples and Defendant Pomeroy, the President of PHS, are that they failed to respond adequately to his grievances and letters of complaint and did not adequately supervise their subordinates.  Plaintiff

also alleges that Defendant Administrative Assistant Sorenson and Defendant Grievance Coordinators Hamel, and Unknown Party #3 and Unknown Party #7 rejected or denied his grievances or failed otherwise to process them.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Tribley, Naples, Pomeroy, Hamel, and Unknown Parties ##3 and 7 engaged in any active unconstitutional behavior by failing to respond to or rejecting his grievances and failing to supervise their subordinates.

Further, Plaintiff has no due process right to file a prison grievance.  The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2

(6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Grievance Coordinators Hamel and Unknown Parties ##3 and 7 did not deprive him of due process by failing to process or destroying any of his grievances.

Finally, Plaintiff's sole allegation against the OCF Warden's Secretary, Unknown Party #4, is that she advised Plaintiff's family in a telephone call that Plaintiff had been a disciplinary problem in E-Unit and had been moved to G-unit for a fresh start. Merely reporting the actions of others does not constitute active, unconstitutional conduct that is actionable under § 1983. Similarly, Plaintiff's only allegations against Defendant Dental Assistant Collins are that she re-issued the "Soft-Diet with Ground Meat" that Plaintiff claims he needed but was not being provided, and that she "seemed upset" when Plaintiff would not accept his partial dentures from Dr. Kallal. (Compl.¶¶ 292, 416, docket #1-1, Page ID##117, 154.) The fact that Collins re-issued an order granting Plaintiff the diet he requested and that she was upset about an interaction between Plaintiff and Dr. Kallal does not demonstrate active unconstitutional conduct. Plaintiff therefore fails to allege any active conduct by Defendants Unknown Party #4 and Collins.

In sum, Plaintiff's claims against Defendants McIntyre, Tribley, Naples, Pomeroy, Hamel, Sorenson, Collins, Unknown Party #3, Unknown Party #4 and Unknown Party #7 will be dismissed for failure to state a claim.

-14-

### C.      Change in Security Classification

In his 508-paragraph complaint, Plaintiff mentions Defendants Nardi, Niemisto and Gilbert in only one paragraph.  Plaintiff asserts that Nardi, Niemisto and Gilbert deprived him of due process when they reclassified him from Level I confinement to a Level V confinement, after he was convicted of a misconduct by Defendant Belzner.  Plaintiff alleges that, under MDOC policy directives, the misconduct conviction should not have resulted in such a change in classification. In the same paragraph, Plaintiff sweepingly asserts that Defendants made the change in classification as part of a conspiracy to retaliate against Plaintiff for filing of one or more grievances.  (*Id.* ¶ 461.)

In another paragraph of the complaint, Plaintiff alleges that Defendants Cavin and Haynie reduced his classification level from Level V to Level II.  Plaintiff complains that his true classification level should have been Level I.  He asserts that the actions of Cavin and Haynie violated MDOC policy and that they therefore they must have been part of a conspiracy to retaliate (*Id.* ¶ 503.)

Finally, Plaintiff alleges that Defendant Belzner improperly changed his classification from Level I to Level V, following Plaintiff's conviction on a misconduct charge.  (*Id.* ¶ 451.)

The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation.  The court held that regardless

of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life.  *Id.*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges.  *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because Plaintiff did not have a constitutional right to a particular security level or place of confinement).  Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim against Defendants Nardi, Niemisto, Gilbert, Cavin, Haynie and Belzner.

Plaintiff's claim that Defendants acted with a retaliatory motive will be addressed in a separate section of this Opinion, *infra*.

-16-

###### D. False Misconduct Charges

Plaintiff alleges that Defendant Jelik wrote two false misconduct charges against him, on one of which he was subsequently found guilty. (Compl. ¶¶ 379-82.) He alleges that Defendant Kerrtu issued a false misconduct charge for insolence, of which Plaintiff was found guilty. (Compl. ¶¶ 367, 369.) In addition, Plaintiff claims that Defendant Belzner reviewed Plaintiff on an allegedly false misconduct charge for disobeying a direct order that was written by Defendant Johns. Belzner apparently did not credit Plaintiff's story and evidence, and Plaintiff evidently was convicted of the misconduct charge. (*Id.* ¶¶ 450-51.)

Plaintiff claims that the major misconduct charges against him were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by

the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[6] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. 472. Plaintiff has not identified any

---

[6]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

-18-

significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). As a consequence, the actions of Defendants Jelik, Kerrtu and Belzner in charging or upholding misconduct charges do not rise to the level of a due process violation.

### E. Retaliation

Plaintiff alleges that every action taken by every officer with which he disagreed was taken in retaliation for Plaintiff's many grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

While the allegations against a number of Defendants are sufficient to support a retaliation claim, some of Plaintiff's allegations are wholly conclusory and dependent upon an assumption that all Defendants at five facilities were acting in concert with one another and shared an intent to retaliate for every grievance filed by Plaintiff against any officer at any time. Such an assumption is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that

it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff merely alleges the ultimate fact of retaliation against a number of Defendants. Specifically, Plaintiff alleges that Defendants Nardi, Niemisto and Gilbert retaliated against him when they increased his security level after he had been convicted by another officer on a misconduct charge. Plaintiff makes the same conclusory claim that Defendants Cavin and Haynie retaliated when they reduced Plaintiff's classification level, but not as far as Plaintiff would have liked.

While the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001), Plaintiff fails to allege what grievance motivated Defendants Nardi, Niemisto, Gilbert, Cavin and Haynie to retaliate. In addition, Plaintiff makes no factual allegation that would demonstrate a connection between any person who was grieved and these Defendants. As a result, Plaintiff's

-20-

conclusory allegations fail to state a claim against Defendants Nardi, Niemisto, Gilbert, Cavin and Haynie.

Plaintiff also fails to state a retaliation claim against Defendants Jelik, Kerrtu and Belzner for allegedly filing or authorizing false misconduct charges on which Plaintiff ultimately was convicted. As the Sixth Circuit recently has recognized, a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, ___ F.3d ___, No. 11-1845, 2013 WL 1490082, at **4-11 (6th Cir. Apr. 12, 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Because Plaintiff's retaliation claim depends on his claim that he allegation of the misconduct charges were false, his claims are precluded by the prior findings of guilt.

In addition, Plaintiff's allegation that Defendant Jelik issued one misconduct charge that was not upheld fails to state a retaliation claim for other reasons. Plaintiff alleges that, at the time of Jelik's misconduct charge for being out of place, Plaintiff was serving his top-lock sanction following a guilty finding on Defendant Kerrtu's misconduct charge. Plaintiff claims that, because he usually did not receive misconduct tickets and was unaware of the "special rules" at OCF for prisoners on top-lock, he did not show Jelik his top-lock pass when he appeared for breakfast, as required at OCF. Jelik issued a misconduct ticket for being out of place. The fact that Plaintiff ultimately was found to be not guilty, apparently because of his ignorance, does not suggest that Jelik had a retaliatory motive for writing the ticket. Plaintiff alleges no fact to support his retaliation claim, other than the bare conclusion that Jelik's misconduct charges "were the product of [the] ongoing conspiracy to retaliate, and retaliation for the exercise of protected conduct." (Compl.

¶ 379.)  Such an allegation is wholly conclusory and fails to state a retaliation claim.  *See Harbin-Bey*, 420 F.3d at 580 (holding that conclusory allegations of retaliatory motive unsupported by material facts are not sufficient to state a claim under § 1983); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff's allegations of retaliation against Defendants Nardi, Niemisto, Gilbert, Cavin, Haynie, Jelik, Kerrtu and Belzner therefore will be dismissed for failure to state a claim. Because Plaintiff makes no other actionable allegations against Defendants Nardi, Niemisto, Gilbert, Cavin, Haynie, Jelik and Belzner, those Defendants shall be dismissed from the action.  The Court will order service of the remaining claims against Defendant Kerrtu.

### D.    Property Claims

Plaintiff alleges that, while he was in segregation on a misconduct charge, unknown corrections officers (Unknown Part(y)(ies) #8) took custody of his property and did not return it to him for four days, well in excess of the 24 hours required under MDOC policy.  Plaintiff complains that the delay violated his right to due process.  In addition, Plaintiff claims that, when he received his property, some legal documents were missing.

Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).  Section 1983 is addressed

-22-

to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.  As a consequence, Plaintiff's allegations about Defendants' three-day delay in returning his property does not state a claim.

Plaintiff's due process claim that Defendants failed to return some part of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy

-23-

Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's claim against Unknown Part(y)(ies) #8 will be dismissed.

### E.     Eighth Amendment

Plaintiff raises numerous claims about the adequacy of his medical treatment by a litany of Defendants.  Given the extensive nature of the allegations, the Court will discuss only those medical allegations that fail to state a claim against a Defendant.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In

-24-

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or

> omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006).

Plaintiff alleges that, on September 28, 2010, the day he arrived at MBP, he sent a health-care request form, stating that he need he needed to see a dentist or doctor immediately about his "eating" problems.  (Compl. ¶ 456.)  He wrote that he was being forced to chew like a rabbit, wearing down his bottom gums and causing great pain.  The unidentified dental assistant, who appears to be Defendant Clark, replied that Plaintiff would be called out when his partial dentures were received from the laboratory.  On September 30, 2010, Plaintiff wrote again, and the grievance was answered by someone, presumably Defendant Clark, who responded, "Ditto."  (*Id.* ¶ 471.)  On

October 4, 2010, Plaintiff wrote again.  Clark responded that Plaintiff was already on the call-out list for dental care. (*Id.* ¶ 473.)  Plaintiff makes no further allegations about Clark.  Plaintiff was seen by the dentist on October 7, 2010.  (*Id.* ¶ 480.)

Even assuming that all of the listed actions were, in fact, taken by Clark, Plaintiff's allegations fail to support a conclusion that Clark acted with deliberate indifference.  By his own admission, Clark was aware that Plaintiff had been seen by other dentists, that he required dentures to fix his "eating" problems, and that those dentures were on order.  Plaintiff makes no claim that it would have been obvious to a layperson or to Clark that there existed urgent change in Plaintiff's dental need.  In fact, by his own admission, Plaintiff made no claims about any new condition.  Further, Clark or someone else scheduled Plaintiff to be seen by a dentist, and he was seen on October 7, 2010, nine days after he first submitted his first request for care to Clark.  Plaintiff's factual allegations fail to support a conclusion that Clark had any reason to be or was aware that Plaintiff had a serious health problem that required more immediate attention than had been scheduled.  He therefore fails to demonstrate that Clark was deliberately indifferent to his care.

Plaintiff also makes very few allegations against three SPR health-care personnel, HUM Hunt, Nurse Chapman and PA Kearney.  The Court will address each in turn.

Plaintiff alleges that, on December 29, 2009, he sent Defendant Hunt a request to provide a second mattress to accommodate his back problems.  (*Id.* ¶ 133.)  On January 8, 2010, Plaintiff received a medical request response from Hunt.  Hunt advised Plaintiff that MDOC guidelines were applicable to such requests, but that medical providers could make an off-guidelines request if he or she believed an accommodation was necessary but did not meet guideline criteria.  Hunt told Plaintiff that he had submitted such a request on December 31, 2009, but it had been

-27-

denied by the Regional Medical Officer.  Hunt told Plaintiff that he had scheduled an appointment with the physician on January 19, 2010.  (*Id.* ¶ 143.)

Plaintiff's complaint is devoid of any allegation indicating the Hunt acted with the requisite subjective intent to deny Plaintiff's medical needs.  Indeed, Hunt apparently considered Plaintiff's need to be sufficiently important to make a special request for accommodation.  When the accommodation was denied, Hunt made an appointment for Plaintiff to see the doctor.  Because Plaintiff fails to allege that Hunt acted with the requisite subjective intent to deprive Plaintiff of his Eighth Amendment right to medical care, the Court will dismiss Plaintiff's claim against Defendant Hunt.

Plaintiff alleges that he submitted a health care request, claiming that he had an itchy rash on his scrotum.  He was promptly seen by Defendant Chapman on January 12, 2010.  (*Id.* ¶ 155.)  Chapman diagnosed "jock itch," and told Plaintiff that he could buy a medicated cream in the prison store.  Chapman also told Plaintiff that he would attempt to get some cream for Plaintiff directly from health care.  (*Id.* ¶ 152.)  On January 13, 2010, Plaintiff wrote a kite to health care, indicating that he had seen Defendant Chapman a few days previously.  Plaintiff advised health care that he was unable to purchase the cream until the following month, and he asked that the cream be issued by health care.  Defendant Bailey answered the kite, stating that the kite was duplicative and giving the same reply Bailey gave Plaintiff on January 11, 2010.  Plaintiff had additional correspondence with other Defendants, but Chapman participated in no further actions.

Even assuming that Plaintiff can demonstrate the existence of an objectively serious medical issue, he fails to allege facts showing that Chapman was subjectively indifferent to that medical issue.  Chapman examined Plaintiff and advised him how to treat the condition.  Chapman

was never again involved in Plaintiff's continuing complaints.  Plaintiff therefore fails to allege that Chapman was deliberately indifferent to his serious medical needs.

Plaintiff's allegations against Defendant Kearney similarly fall short of stating an Eighth Amendment claim.  Plaintiff alleges that he submitted a health care kite to Defendant Kearney on January 14, 2010, describing his visit with Chapman on January 12, and advising Kearney that he would not be able to get the medicine before February 20, 2010, due to his lack of funds.  He therefore asked that Kearney provide the cream immediately.  Kearney did not answer the kite.  Instead, it was answered by PA Myers, who is not named as a Defendant in this action.  Myers checked the indigency list, and it did not list Plaintiff as indigent.  Myers therefore denied the request for the medication, but provided Plaintiff some educational materials about the condition.  (*Id.* ¶¶ 155-56.)  Plaintiff does not mention Defendant Kearney again, except to indicate that he filed a grievance against Kearney.  (*Id.* ¶ 173.)

Plaintiff alleges nothing more than that he sent Defendant Kearney a request for health-care treatment, to which another health provider responded.  Nothing about Kearney's conduct suggests deliberate indifference to Plaintiff's medical needs, serious or otherwise.

Because Plaintiff has failed to allege an Eighth Amendment claim against Defendants Clark, Hunt, Chapman and Kearney, the Court will dismiss them from the action.

## F.    Remaining Defendants

The Court concludes that Plaintiff's allegations are sufficient to state at least one claim against the remaining Defendants.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Szappen, Mohrman, Bell, McCauley, Finan, Howard, Unknown Party #1, Burtch, Bishop, Malik, Filsinger, Vittitow, Marble, Masley, Tantchow, Robinson, Jados, Teed, McMillen, Petty, Ludwick, McIntyre, Tribley, Naples, Pomeroy, Hamel, Sorenson, Collins, Unknown Party #3, Unknown Party #4, Unknown Party #7, Nardi, Niemisto, Gilbert, Cavin, Haynie, Jelik, Belzner, Unknown Part(y)(ies) #8, Clark, Hunt, Chapman and Kearney will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and failure to state a claim.  The Court will serve the complaint against the remaining named Defendants.[7]

An Order consistent with this Opinion will be entered.

Dated:   May 28, 2013                    /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         Chief United States District Judge

---

[7]At this juncture, the Court lacks sufficient information to order service on Defendant Unknown Parties ##2, 5, 6, and 9.